IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Patricia Ann Andrews, *as substitute party for Eugene Robert Andrews, III*, <br><br> Plaintiff, <br><br> v. <br><br> Carolyn W. Colvin, Acting Commissioner of Social Security, <br><br> Defendant. | C/A No. 0:14-4009-RBH-PJG <br><br><br><br> **REPORT AND RECOMMENDATION** |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Patricia Ann Andrews ("Plaintiff"), on behalf of the deceased claimant, Eugene Robert Andrews, III ("Andrews"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying Andrews's claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**SOCIAL SECURITY DISABILITY GENERALLY**

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also

Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the ALJ to consider, in sequence:

(1)     whether the claimant is engaged in substantial gainful activity;

(2)     whether the claimant has a "severe" impairment;

(3)     whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)     whether the claimant can perform his past relevant work; and

(5)     whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 404.1520(h).



**ADMINISTRATIVE PROCEEDINGS**

In May 2011, Andrews applied for DIB, alleging disability beginning February 12, 2011. Andrews's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on February 11, 2013, at which Andrews, who was represented by Richard V. Davis, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on May 3, 2013 finding that Andrews was not disabled. (Tr. 10-27.)

Andrews was born in 1969 and was forty-one years old on February 12, 2011—the alleged disability onset date. (Tr. 26.) He has some college education and has past relevant work experience as a salesperson of home improvement wood products, carpet installer, and tool and dye mechanic. (Tr. 26, 93-95, 207.) Andrews alleged disability due to injury to his right hand (amputation of two fingers), bi-polar disorder, and post-traumatic stress disorder. (Tr. 206.)

In applying the five-step sequential process, the ALJ found that Andrews had not engaged in substantial gainful activity since February 12, 2011—the alleged disability onset date. The ALJ also determined that Andrews's status post-traumatic injury to the right hand with amputation of the middle and ring fingers and deformities to the index and little fingers, degenerative joint disease of the right shoulder status post arthroscopic surgery, obesity, anxiety disorder, personality disorder, and bipolar disorder were severe impairments. However, the ALJ found that Andrews did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Andrews retained the residual functional capacity to



> perform medium work as defined in 20 CFR 404.1567(c) with certain additional limitations. The claimant is capable of lifting and/or carrying 50 pounds occasionally and 25 pounds frequently. The claimant is capable of sitting, standing and walking for 6 hours each out of an 8-hour workday. The claimant can never push/pull with the right upper extremity. The claimant can never climb ladders, ropes, or scaffolds. The claimant can use the right upper extremity only as a helper hand. The claimant must avoid concentrated exposure to hazards. The claimant can perform work involving simple, one-two step tasks and occasional contact with the public.

(Tr. 17.) The ALJ found that Andrews was unable to perform any past relevant work, but that considering Andrews's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Andrews could perform. Therefore, the ALJ found that Andrews was not disabled from February 12, 2011 through the date of his decision.

The claimant died on May 12, 2013. The claimant's wife completed a Substitution of Party Form on July 2, 2013 and requested review of the ALJ's decision. (Tr. 168.) The Appeals Council denied the request for review on August 19, 2014, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant



evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Plaintiff raises the following issues for this judicial review:

I.   Did the Defendant fail to properly address the treating physician evidence? []

II.  Did the Defendant fail to properly address the opinion of Dr. Benson Hecker and assess [Andrews's] vocation and rehabilitation status? []

III. Did the Defendant commit reversible error by mischaracterizing and misstating the record in significant aspects? []

IV.  Did the Defendant fail to make a proper credibility finding? []

(Pl.'s Br., ECF No. 10.)

## DISCUSSION

**A.   Treating Physicians**

Plaintiff first argues that the ALJ erred in evaluating opinion evidence from Dr. John Sanders, Andrews's treating orthopedic surgeon, and from Dr. Peter Owens, Andrews's treating psychiatrist. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does



not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

> Additionally, SSR 96-2p provides that a finding that
>
> a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. at *5.

On August 10, 2009, Dr. Sanders issued a statement indicating that Andrews had a 55% permanent impairment of the right upper extremity. Dr. Sanders also noted that Andrews's permanent work restrictions would include the use of his right hand "in an assistive role and for very light activities (no lifting more than 3-5 pounds)" and that as a result of the amputations and stiffness, Andrews would have significantly decreased dexterity which would also require accommodation and limit the use of his right dominant hand in an assistive role. (Tr. 472.) The ALJ quoted this opinion and stated that he gave Dr. Sanders's assessment great weight. The ALJ stated that "it is also in accord with my finding that the claimant can use his right upper extremity only as a helping hand." (Tr. 23.) To the extent that Plaintiff is challenging the ALJ's evaluation of this opinion, she has failed to point to any error by the ALJ.

Plaintiff appears to suggest that later notes by Dr. Sanders—indicating that Andrews would benefit from a psychiatric evaluation and suggesting that, if Andrews was cleared from a psychosocial standpoint, Dr. Sanders would consider allowing Andrews to transition back to work that was essentially one-handed duty with the right hand being used in an assistive role—somehow support the subsequent development of severe psychiatric impairments. It is unclear exactly how Plaintiff is relying on these statements to support an argument regarding any alleged error by the ALJ in evaluating the medical opinion evidence. To the extent that Plaintiff argues that these notes support the opinions of Dr. Owens, Andrews's treating psychiatrist, for the reasons that follow the court finds that Plaintiff has failed to demonstrate any error by the ALJ with regard to Dr. Owens's opinions.



At issue appear to be several opinions from Dr. Owens, which the ALJ summarized as follows:

> In a March 7, 2012, questionnaire, Dr. Owens opined that the claimant had many marked limitations with regard to basic mental work activities (B16F).  Through a July 31, 2012, questionnaire, Dr. Owens opined that the claimant has significantly greater mental limitations than those set forth above.  Among other issues, Dr. Owens indicated that the claimant had marked limitations in activities of daily living and maintaining social functioning, with three repeated episodes of decompensation.  Dr. Owens further indicated that the claimant had listing level mental impairments and other limitations inconsistent with the performance of work activity on a regular and continuing basis (B10F, B11F).  On July 9, 2013, Dr. Owens submitted a statement reaffirming his prior opinions (B18F).

(Tr. 23.)  In evaluating these opinions, the ALJ stated:

> I have given Dr. Owen[s]'s opinions little weight.  I note that Dr. Owen[s]'s hand-written treatment records are largely illegible, and accordingly give little support to his conclusions (B4F, B8F, B16F).  Additionally, in his forms Dr. Owens indicated that the claimant presented with GAF scores between 60 and 70 (B10F/1; B11F/l; B16F/7), indicating only mild mental symptoms.  Such scores are inconsistent with Dr. Owen[s]'s opinions regarding listing level mental impairments.  Dr. Owen[s]'s opinions are also inconsistent with his June 27, 2011 form.  In that form, Dr. Owens did not indicate the claimant's level of mental impairment.  However, he reported that the claimant's mental status was normal other than a flat mood/affect.  In fact, that form provides that the claimant was fully oriented with intact thought processes, appropriate thought content, and good attention, concentration, and memory (B6F).

(Id.)

Plaintiff argues that there was not persuasive contrary evidence to support affording Dr. Owens's opinions little weight and that the ALJ erred in giving more weight to the non-examining state agency medical consultants who did not have the benefit of Dr. Owens's opinions at the time they issued their opinions.  Plaintiff further argues that the ALJ considered selective portions of the record and "failed to consider the continuous and consistent reports of pain and psychological

overlay that necessarily limit his activities and prevented him from being able to work." (Pl.'s Br. at 9, ECF No. 10 at 9.)

Upon review of the ALJ's decision and the record, the court concludes that the ALJ appears to have applied the relevant factors in evaluating Dr. Owens's opinions and finds that Plaintiff has failed to demonstrate that the ALJ's decision to afford little weight to Dr. Owens's opinions is unsupported by substantial evidence or based on an incorrect application of the law. See 20 C.F.R. § 404.1527(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted). In discussing these opinions, the ALJ recognized that Andrews presented with GAF scores between 60 and 70, and found these scores to be inconsistent with Dr. Owens's opinions. The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, fourth edition ("DSM-IV"), contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning. A GAF score may reflect the severity of symptoms or impairment in functioning at the time of the evaluation.[2] Id. at 32-33. According to the DSM-IV, a GAF score between 61 and 70 may reflect "[s]ome mild symptoms . . . or difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, [and] has some meaningful interpersonal relationships." DSM-IV at 34. A GAF score between 51 and 60 may reflect "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts

---

[2] The court notes that the fifth edition of the DSM, published in 2013, has discontinued use of the GAF. American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 16 (5th ed. 2013) ("DSM-V").



with peers and co-workers)." Id.  The ALJ also observed that Dr. Owens's treatment records were largely illegible; however, the ALJ found that Dr. Owens's findings in the June 27, 2011 form were inconsistent with his listing level opinions.  Moreover, even assuming that Plaintiff may be able to point to selective records that arguably support Dr. Owens's opinions, she has failed to demonstrate that the ALJ's findings are unsupported by substantial evidence.  In fact, the only medical findings that Plaintiff specifically points to in support of her argument are (1) medical findings that are included in the opinions that the ALJ clearly considered and (2) psychiatric hospitalizations prior to the alleged onset date.  To the extent that Plaintiff relies on Andrews's self-reports of pain and mental limitations as opposed to any medical findings or observations supporting such severe limitations from pain and in physical abilities, the court observes that in evaluating Andrews's subjective complaints of pain, the ALJ found that "the claimant's contentions regarding his symptoms and limitations are not wholly credible."[3]  (Tr. 19.)

To the extent Plaintiff argues that the ALJ erred in giving the opinions of the state agency medical consultants great weight, she has failed to demonstrate any error.  Such opinions can constitute substantial evidence in support of an ALJ's decision over the opinion of an examining physician so long as the opinions from the non-examining physicians are consistent with the record as a whole.  See Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986); Stanley v. Barnhart, 116 F. App'x 427, 429 (4th Cir. 2004) (disagreeing with the argument that the ALJ improperly gave more weight to residual functional capacity assessments of non-examining state agency physicians over those of examining physicians and finding that the ALJ properly considered evidence provided by

---

[3] The court notes that Plaintiff separately challenges the ALJ's evaluation of Andrews's credibility, which is addressed below.



those physicians in context of other medical and vocational evidence); see also 20 C.F.R. § 404.1527(e)(2)(i) ("State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified . . . [and] are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider [their] findings and opinions as opinion evidence"); Thacker v. Astrue, Civil No. 3:11CV246-GCM-DSC, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011) ("The fact that the state agency physician did not have access to the entire evidentiary record—because the record was incomplete a[t] the time of the assessment—is inconsequential as the ALJ considered the entire evidentiary record and substantial evidence supports his determination.") (Report and Recommendation), adopted by 2012 WL 380052 (W.D.N.C. Feb. 6, 2012).

  In sum, the ALJ properly weighed Dr. Sanders's opinion and the opinions of the state agency medical consultants and reasonably found that the medical findings and observations in the record did not support Dr. Owens's opinions. It appears that the ALJ, as part of his duties in weighing the evidence, properly relied on medical evidence in making his residual functional capacity determination and resolving conflicts of evidence. Where, as here, the record contains conflicting medical evidence, it is the purview of the ALJ to consider and weigh the evidence, and resolve the conflict. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). For all of these reasons, the court finds that Plaintiff has not shown that the ALJ's

decision with regard to the medical opinion evidence was unsupported by substantial evidence or reached through application of an incorrect legal standard.

**B.     Vocational Opinion**

Plaintiff next argues that the ALJ erred in evaluating the opinion from Dr. Benson Hecker, a vocational expert that gave a sworn statement on December 26, 2012  regarding Andrews at the request of Andrews's representative.  The ALJ's opinion reflects the following with regard to this opinion:

> In this sworn statement, Dr. Hecker opined that, based upon his examination of the claimant's medical and demographic information, the claimant "is unable to perform any substantial gainful work activity which exists in significant numbers in open competition with other[s]" (B16E/3).  Dr. Hecker gave other opinions regarding the claimant's physical and mental impairments and their affect upon his work-related abilities (B16E).  I have given Dr. Hecker's opinions little weight.  He is not a physician, psychologist or other health care professional.  Accordingly, he has no expertise upon which to base an opinion regarding the effect of the claimant's impairments upon his residual functional capacity.  Moreover, Dr. Hecker was not asked about the availability of jobs for a person with the residual functional capacity set forth above.  Accordingly, he never considered the residual functional capacity I have found when assessing the availability of work for the claimant.

(Tr. 24-25.)

Plaintiff argues that Dr. Hecker does have expertise to render an opinion as to the effect of Andrews's impairment on his residual functional capacity, especially considering the fact that the Social Security Administration hires Dr. Hecker to provide vocational expert opinions at disability hearings.  However, as pointed out by the Commissioner and the ALJ, Dr. Hecker's vocational opinion is not based upon Andrews's residual functional capacity as assessed by the ALJ on the record presented; rather, it is based upon Dr. Hecker's own residual functional capacity assessment, upon which the ALJ found that Dr. Hecker had no expertise to base an opinion.  See, e.g., 20 C.F.R.



§ 404.1566(e) (describing the use of vocational experts by stating "[i]f the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist"); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments.") (citation omitted).  Moreover, Plaintiff's reliance on a statement in SSR 06-03p that "non-medical sources" "are also valuable sources of evidence for assessing impairment severity and functioning," is unavailing.  The court observes that the full text of SSR 06-03p describes these sources as sources who have had contact with the individual, often close contact, or seen the individual.  In this case, there is no indication that Dr. Hecker had any personal contact with Andrews, and the ALJ's decision reflects that he weighed the appropriate factors in evaluating this opinion.

**C.     Characterization of the Record and Evaluation of Andrews's Subjective Complaints**

Plaintiff's next two arguments appear to be interrelated.  Plaintiff first argues that the ALJ erred in finding that Andrews's activities of daily living undercut his allegation of disability.[4]  Additionally, Plaintiff generally argues that the ALJ erred in evaluating Andrews's credibility.

With regard to subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms

---

[4] To the extent that Plaintiff makes arguments challenging the general manner in which the ALJ in this case typically questions claimants, the court is unable to discern an argument directed to a specific allegedly erroneous action taken by the ALJ with regard to this case.  Similarly, to the extent that Plaintiff generally argues that the ALJ ignored evidence that supports Andrews's claim, she has failed to provide any specific support for this argument.



is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). It appears that in this matter only the second step is at issue,[5] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges []he suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

    (i)    Your daily activities;
    (ii)    The location, duration, frequency, and intensity of your pain or other symptoms;
    (iii)    Precipitating and aggravating factors;

---

[5] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



|     |     |
| --- | --- |
| (iv) | The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; |
| (v) | Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; |
| (vi) | Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and |
| (vii) | Other factors concerning your functional limitations and restrictions due to pain or other symptoms. |

20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ summarized Andrews's allegations as follows:

At the hearing, the claimant testified that he experienced an on-the-job injury in December 2008, from which he lost the two middle fingers of the right hand and suffered injuries to the remaining digits. The claimant indicated that he could not grip with the right hand. He stated that he could not drive and had difficulty buttoning buttons and tying his shoes. The claimant also endorsed chronic pain at a level 6 or 7 on a 10-point scale in the right hand. He stated that his right hand swells and becomes re[]d if he uses it for activities. The claimant stated that he also has right shoulder impingement and is unable to raise his right arm above his head.

The claimant also testified to mental disorders, including bipolar disorder, social anxiety disorder, and posttraumatic stress disorder. He endorsed panic symptoms when out in public and episodes of depression with suicidal thoughts. During manic episodes, the claimant reported reckless behavior, racing thoughts, and poor memory. He also stated that he had inadequate sleep.

Through disability reports, the claimant asserted that he is unable to work due to an injury to his right hand with the amputation of two fingers, bipolar disorder, posttraumatic stress disorder, and anxiety disorder (B2E, B8E, B11E). Through a written statement submitted at the reconsideration level, the claimant asserted that he experienced chronic pain in his right hand. He indicated that the remaining fingers on his right hand are "useless" due to crush deformities. The claimant also endorsed bipolar disorder, posttraumatic stress disorder, and anxiety. He indicated that he experienced episodes of depression, during which he would "not get off the couch or go outside for days." The claimant further reported recurring thoughts of the day he injured his hand, which cause sadness, irritability, and frustration. He stated that he felt "useless," was a "recluse" and cared "about very little" (B10E).

Through his function report, the claimant asserted that his impairments interfered with his abilities related to lifting, reaching, memory, completing tasks,



concentration, understanding, following instructions, using his hands, and getting along with others. He stated that he could lift only two pounds or less. He stated that he could pay attention for only five to ten minutes and that he did not finish what he star[t]ed. The claimant stated that he did not follow written or spoken instructions well. He likewise stated that he did not handle stress or changes in routine well. He reported difficulty with daily activities due to his hand and mental impairments. The claimant also stated that his medications caused side effects, including memory loss, tremors, drowsiness, sluggishness, nervousness, confusion, anxiety, mood swings, and abnormal thinking (B4E).

(Tr. 17-18.)

The ALJ found that Andrews's statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not wholly credible based on the record in this case. In support of this finding, the ALJ found that the medical evidence did not support Andrews's allegations. (Tr. 19, 20-22.) The ALJ also observed inconsistencies in Andrews's function reports and his testimony at the hearing; found that Andrews failed to follow through with medical treatment at times; and found that Andrews's activities of daily living were inconsistent with his disabling allegations. (Tr. 19.) Thus, Andrews's daily activities were not the only factor that the ALJ considered. The ALJ also found that Andrews's allegations were inconsistent with the objective medical evidence and his treatment, as well as inconsistent with prior reports, and the ALJ provided specific examples of these inconsistencies. These are appropriate factors to consider under the regulations. See 20 C.F.R. § 404.1529(c)(3). Therefore, Andrews's activities were one of several reasons offered by the ALJ to discount his credibility, and contrary to Plaintiff's arguments, there is no indication that the ALJ used Andrews's activities as the sole basis for a finding of whether Andrews is or is not disabled.

Moreover, upon review of the record, the court finds that Plaintiff has failed to demonstrate that the ALJ's finding that Andrews's activities of daily living were inconsistent with his subjective complaints was unsupported by substantial evidence. These activities included preparing



microwavable meals daily, going outside three to four times a week, shopping in stores for food and clothing once a week for approximately two hours, attending church weekly, reading and watching television daily, washing dishes, washing laundry, vacuuming, taking out the trash, cleaning the kitchen, occasionally visiting friends and family, going out to eat, taking his son to the park, attending his son's football games, and using a computer to help his son with homework projects. See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (noting that a claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints).

Upon review of the record as a whole and the parties' briefs, the court finds that Plaintiff has failed to demonstrate that the ALJ's determination that Andrews was not entirely credible is unsupported or controlled by an error of law. Even assuming that Plaintiff can point to selective medical evidence that may support Andrews's allegations of pain, she has failed to demonstrate that the ALJ's decision is unsupported by substantial evidence.[6] As stated above, it the ALJ's duty to weigh credibility. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). Moreover, the ALJ's decision clearly reflects that he considered the relevant factors in weighing Andrews's credibility, one of which was Andrews's daily activities. See 20 C.F.R. § 404.1529(c)(3). Therefore, the court finds that Plaintiff has failed to demonstrate that the ALJ's credibility analysis as a whole is unsupported by substantial evidence or controlled by an error

---

[6] To the extent that Plaintiff suggests that Andrews's accidental death by drug overdose after the issuance of the ALJ's decision should somehow alter the ALJ's decision, the court disagrees. Plaintiff has failed to demonstrate how this occurrence renders the ALJ's decision unsupported or controlled by an error of law.



of law. See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

**RECOMMENDATION**

For the foregoing reasons, the court finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 26, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).